**In re Terri Cox FERGUSON, Relator.**

No. 01–12–00607–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 12, 2013.

---

8. The homeowners argued this theory in their summary-judgment briefing but not in their appellate briefing.

Jeffrey A. Fanaff, Acosta, Shrode & Soule, Houston, TX, for Relator.

Robert E. Ammons, The Ammons Law Firm, LLP, Houston, TX, for Real Party in Interest.

Panel consists of Chief Justice RADACK and Justices JENNINGS and KEYES.

## OPINION

TERRY JENNINGS, Justice.

Relator, Terri Cox Ferguson, has filed a motion for rehearing. *See* TEX.R.APP. P. 49.3. We deny Ferguson's motion for rehearing. I withdraw my January 10, 2013 opinion and substitute this opinion in its place.

By petition for writ of mandamus, Ferguson challenges the trial court's order compelling her response to certain requests for admissions in the underlying suit filed by real party in interest, Mario Bernal.[1] In her sole issue, Ferguson contends that the trial court abused its discretion in ordering her to respond in violation of the United State Constitution's Fifth Amendment privilege against self-incrimination.

We deny the petition for writ of mandamus.

### Background

In her petition, Ferguson represents that Bernal has filed a suit against her for wrongful death and survival, alleging that Ferguson negligently caused the death of Gabriela Deyanira Rodriguez. In his response to Ferguson's petition, Bernal asserts that Ferguson, "[w]hile intoxicated," struck Rodriguez, a pedestrian, with her car and "continued driving for approximately 14.5 miles" before being stopped by a police officer. Bernal asserts that Rodriguez's injuries "were so severe that [she] eventually died."

Ferguson also represents that a grand jury issued a true bill of indictment, accusing her of committing the offenses of intoxication manslaughter, failure to stop and render aid, and felony murder. And Bernal has attached to his response a copy of an indictment in which it is alleged that Ferguson committed the offense of intoxication manslaughter by "operating a motor vehicle in a public place while intoxicated and by reason of that intoxication, caus[ing] the death of ... Rodriguez."

Bernal served Ferguson with requests for admissions, in which he asked Ferguson to:

1. Admit that You do not contend that any defect or failure on the part of Your Vehicle caused the Incident.

2. Admit that You do not contend there is a Responsible Third Party not named by Plaintiff as a defendant in this lawsuit.

3. Admit that You were not on any prescription medication at the time of the Incident.

4. Admit that You are not claiming that You suffered from any medical condition immediately prior to the Incident that caused the Incident.

5. Admit that You are not claiming that You suffered from any medical condition immediately prior to the Incident that contributed to causing the Incident.

6. Admit that Your Vehicle was involved in the Incident.

7. Admit that Gabriela Deyonira Rodriguez was killed as a result of the Incident.

8. Admit that You suffered no physical injuries as a result of the Incident.

9. Admit that You did not stop at the scene to render aid following the Incident.

---

1. The underlying trial court case is styled *Mario Bernal, Individually, as Heir at Law, as Representative of the Estate of Gabriela Deyanira Rodriguez, Deceased, and as Next Friend of Minors Mario Alberto Bernal, Yaniss Victoria Bernal and Jennifer Yareth Bernal,* in the 133rd District Court, Harris County, Texas, No. 2011–72784, the Honorable Jaclanel McFarland presiding.

10. Admit that You did not call 911 at any [time] following the Incident.

11. Admit that You did not return to the scene of the Incident voluntarily.

12. Admit that You struck Gabriela Deyonira Rodriguez with Your Vehicle.

14. Admit that You failed to maintain a single marked lane of travel at the time of the Incident.

15. Admit that You failed to drive in a single lane at the time of the Incident.

16. Admit that You operated Your Vehicle in a reckless manner at the time of the Incident.

17. Admit that You failed to control Your speed at the time of the Incident.

18. Admit that Gabriela Deyonira Rodriguez did not cause the Incident.

19. Admit that You owed a duty to Gabriela Deyonira Rodriguez to use ordinary care in the operation of Your Vehicle.

20. Admit that at the time of the Incident You breached the duty to use ordinary care in the operation of Your Vehicle.

21. Admit that Gabriela Deyonira Rodriguez sustained fatal injuries in the Incident.[2]

In her "Defendant's Objections and Responses to Plaintiffs Request for Admissions," Ferguson responded, for each of the above requests, "On the advice of counsel, I hereby assert my rights under the Fifth Amendment to the United States Constitution and decline to answer this question." She then, "[s]ubject to and without waiving the foregoing objection,"

responded, "DENY" for each of the above requests.

Bernal then filed a Motion to Compel Ferguson's responses to the requests. Both Ferguson and Bernal represent that the trial court held two hearings on the motion. The trial court granted Bernal's motion and overruled Ferguson's assertion of the Fifth Amendment privilege for each of Bernal's requests.

### Standard of Review

■■■■ Mandamus is an extraordinary remedy that is available only when (1) a trial court clearly abuses its discretion and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). With respect to a trial court's determination of legal principles, "[a] trial court has no 'discretion' in determining what the law is or applying the law to facts." *In re Prudential*, 148 S.W.3d at 135 (quoting *Walker*, 827 S.W.2d at 840).

### Requests for Admissions and the Fifth Amendment Privilege

In her sole issue, Ferguson argues that the trial court erred in ordering her to respond to Bernal's requests for admissions because her responses "might tend to subject her to further criminal prosecution and/or aid the criminal prosecutor in the preparation of the criminal case currently pending against her."

■■■■ The United States Constitution both guarantees that a person may not be compelled to testify or give evidence against herself. *See* U.S. CONST. amend.

---

**2.** There was no request for admission number 13.

V; *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975); *In re Commitment of Lowe*, 151 S.W.3d 739, 745 (Tex.App.-Beaumont 2004, no pet.). The Fifth Amendment can be asserted in civil cases "wherever the answer might tend to subject to criminal responsibility [she] who gives it." *Tex. Dept. of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex.1995) (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924)). Thus, it may be asserted to avoid general civil discovery if the person invoking it reasonably fears the answer would tend to incriminate her. *Id.; see also Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979). However, blanket assertions of the privilege in civil cases are impermissible. *See Lowe*, 151 S.W.3d at 745; *In re Commitment of Browning*, 113 S.W.3d 851, 862 n. 10 (Tex.App.-Austin 2003, pet. denied). And the privilege must be asserted on a question-by-question basis. *Lowe*, 151 S.W.3d at 745; *In re Verbois*, 10 S.W.3d 825, 828 (Tex.App.-Waco 2000, orig. proceeding).

 Moreover, in a civil suit, a witness's decision to invoke the privilege is not absolute. *In re Speer*, 965 S.W.2d 41, 45 (Tex.App.-Fort Worth 1998, orig. proceeding). A trial court is entitled to determine whether the assertion of the privilege appears to be based upon the good faith of the witness and is justifiable under all of the circumstances. *Ex Parte Butler*, 522 S.W.2d 196, 198 (Tex.1975); *In re R.R.*, 26 S.W.3d 569, 574 (Tex.App.-Dallas 2000, orig. proceeding); *Speer*, 965 S.W.2d at 45. Before compelling answers to discovery in a civil case over an assertion of the Fifth Amendment privilege, the court must be "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency to incriminate." *Butler*, 522 S.W.2d at 198. Upon a party's assertion of the Fifth Amendment privilege to a discovery request in a civil suit, the trial court reviews the discovery request, applies the law of privilege, discovery, and protection to the request, and determines how best to protect the privilege, the right to proceed with the case, and the right to defend the suit. *Speer*, 965 S.W.2d at 45–46; *see In re R.R.*, 26 S.W.3d at 574. "It is the trial court's duty to consider the witness's evidence and argument on each individual question and determine whether the privilege against self-incrimination is meritorious." *Lowe*, 151 S.W.3d at 745 (quoting *Speer*, 965 S.W.2d at 46).

 The inquiry by the court is necessarily limited because the witness only has to show that a response is likely to be hazardous to her. *Speer*, 965 S.W.2d at 45. The witness cannot be required to disclose the very information the privilege protects. *Butler*, 522 S.W.2d at 198; *Speer*, 965 S.W.2d at 45. Each question for which the privilege is claimed must be studied, and the court must forecast whether an answer to the question could tend to incriminate the witness in a crime. *Speer*, 965 S.W.2d at 45.

Critical to the analysis, in regard to requests for admissions, the Texas Rules of Civil Procedure provide that,

> Any admission made by a party under this rule may be used *solely in the pending action and not in any other proceeding.*

TEX.R. CIV. P. 198.3 (emphasis added). And the primary purpose of requests for admissions is to simplify trials by eliminating matters about which there is no real controversy. *Boulet v. State*, 189 S.W.3d 833, 838 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *Peralta v. Durham*, 133 S.W.3d 339, 341 (Tex.App.-Dallas 2004, no pet.).

In *In re Speer,* the First State Bank of Texas served Speer with "requests for admissions, requests for production of documents, and interrogatories" in the bank's suit against Speer for breach of contract. 965 S.W.2d at 44. Speer denied all the requests for admissions and answered only some of the interrogatories; asserting the Fifth Amendment privilege, he raised numerous objections to the unanswered interrogatories and the requests for production. *Id.* The bank filed a motion to compel, arguing that Speer had waived his right to assert the Fifth Amendment privilege by answering the requests for admissions and some of the interrogatories. *Id.* The Fort Worth Court of Appeals held that Speer did not waive his Fifth Amendment privilege by answering the requests for admissions. *Id.* at 46. Noting that the Texas Rules of Civil Procedure specifically provide that an admission may not be used against a party "in any other proceeding," the court reasoned that "a party may not assert the privilege against self-incrimination as a reason for refusing to answer requests for admission." *Id.*

In support of its reasoning, the court in *Speer* relied on *Katin v. City of Lubbock,* 655 S.W.2d 360 (Tex.App.-Amarillo 1983, writ ref'd n.r.e.). In *Katin,* the defendant challenged the trial court's rendition of summary judgment in which it declared that Katin had violated a zoning ordinance. *Id.* at 361. Some of the evidence supporting the summary judgment consisted of facts deemed to be admitted after Katin, asserting the Fifth Amendment privilege, had refused to admit or deny certain requests for admissions. *Id.* at 362. The Amarillo Court of Appeals held that Katin could not assert the Fifth Amendment privilege in refusing to answer requests for admissions of fact because "the rule language prevents the requested admissions, if made, from being used against the

answerer in any other proceeding." *Id.* at 363. Accordingly, the court held that the trial court did not err in deeming admitted the facts asserted in the City's requests for admissions. *Id.*

In support of her argument that she properly asserted the Fifth Amendment privilege in reply to Bernal's requests for admissions, Ferguson relies on two federal court opinions: *Davis–Lynch v. Moreno,* 667 F.3d 539 (5th Cir.2012) and *Gordon v. Federal Deposit Insurance Corp.,* 427 F.2d 578 (D.C.Cir.1970). In *Moreno,* the United States Court of Appeals for the Fifth Circuit stated generally, without elaboration, that "a party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents." 667 F.3d at 547 (citing 8 Charles Wright, Arthur R. Miller and Richard L. Marcus, *Federal Practice and Procedure* § 2018, 3d ed. 2005)).

In *Gordon,* a civil defendant asserted the Fifth Amendment privilege in response to the plaintiff's requests for admissions because "the matters and things requested involve the circumstances and subject matter of a pending indictment." 427 F.2d at 579. The federal district court, "without explanation," directed the defendant to answer the requests for admissions and, when the defendant further refused, it granted summary judgment in favor of the plaintiff " 'solely' on [the order directing the defendant to respond] and defendant's failure to comply" because "the matters on which plaintiff requested an admission are deemed admitted by defendant." *Id.* In the defendant's appeal from the summary judgment, the United States Court of Appeals for the District of Columbia Circuit noted that the federal rule regarding requests for admissions provided that an answer to a request for admission may not

be used in "any other proceeding." *Id.* at 311 (citing Fed.R.Civ.P. 36(b)). However, the court recognized the possibility that such answers could be used by a criminal prosecutor "as a confirmation that facilitates preparation of the criminal case, or perhaps as a lead to other evidence, which is part of the protection of the constitutional privilege." *Id.* Because the federal district court "made no findings" regarding why it had denied the defendant's motion to strike the request for admissions, the court concluded that there was "no indication" that the trial court "had considered the possibility of incrimination through more indirect use of any admissions." *Id.* The court reversed the summary judgment and remanded the case back to the district court "to clarify the reasons" for denying the defendant's motion to strike the requests for admissions. *Id.*

 Here, although both parties assert that the trial court held two oral hearings on Bernal's motion to compel, Ferguson has not provided this court with a reporter's record of the hearings. A party bringing a petition for writ of mandamus must file with this Court:

(1) a certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding; and

(2) a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered in evidence, or a statement that no testimony was ad-

duced in connection with the matter complained.

Tex.R.App. P. 52.7(a). And it is the burden of the relator to bring forth a sufficient record demonstrating that the trial court has abused its discretion, so as to entitle her to mandamus relief. *See Walker,* 827 S.W.2d at 837; *In re Bill Heard Chevrolet, Ltd.,* 209 S.W.3d 311, 314 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding).

When a party asserts the Fifth Amendment privilege in a civil case, the trial court applies the law of privilege, discovery, and protection to the request, and determines how best to protect the privilege, the right to proceed with the case, and the right to defend the suit. *Speer,* 965 S.W.2d at 45–46. The trial court is to "consider the witness's evidence and argument on each individual question and determine whether the privilege against self-incrimination is meritorious." *Lowe,* 151 S.W.3d at 745 (quoting *Speer,* 965 S.W.2d at 46).

Here, as in *Gordon,* there is no indication of how or why the trial court overruled Ferguson's assertion of the Fifth Amendment privilege and granted Bernal's motion to compel. Ferguson has not provided this Court with an authenticated transcript of any relevant testimony.[3] From the record before us, it cannot be determined whether Ferguson established to the trial court how her answers may tend to incriminate her in the criminal proceedings despite the provision in rule 198.3 that her answers could "not be used against [her] in any other proceeding."

**3.** In her motion for rehearing, Ferguson asserts that at both oral hearings, "there was no evidence heard and no record made." She also asserts, without any support in the record, that the trial court ruled that any use of the Fifth Amendment privilege is unavailable in response to requests for admissions. However, the only indication we have of the trial court's ruling is its order overruling her asser-

tion of the Fifth Amendment privilege to the specific requests for admissions, not an order ruling that any use of the privilege is unavailable under the same circumstances. And Ferguson also did not include in the record Bernal's motion to compel, her response to the motion to compel, or Bernal's response, all of which are referenced in the trial court's order.

And it cannot be determined whether the trial court properly applied the law of privilege as to each individual request for which Ferguson asserted her Fifth Amendment privilege. Accordingly, I would hold that Ferguson has not presented us with a record that is adequate to support the issuance of a writ of mandamus.

In sum, it cannot be concluded that the trial court acted in an arbitrary or unreasonable manner in overruling Ferguson's assertion of the Fifth Amendment privilege and ordering her to respond to Bernal's requests for admissions. *See, e.g., In re Pilgrim's Pride Corp.*, 187 S.W.3d 197, 198–99 (Tex.App.-Texarkana 2006, orig. proceeding) (holding that appellate court could not determine whether trial court abused its discretion in denying relator's motion to compel the other party to produce documents because it could "only speculate whether there was evidence to support the trial court's denial"); *see also In re Le*, 335 S.W.3d 808, 813–14 (Tex. App.-Houston [14th Dist.] 2011, orig. proceeding) (holding that record was inadequate to conclude that trial court abused its discretion in awarding "death penalty" sanctions where relator did not provide court with hearings on sanctions or motion to compel).

### Conclusion

We **deny** the petition for writ of mandamus.

Chief Justice RADACK, concurring in result only.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting on rehearing.

Relator, Terri Cox Ferguson, filed a petition for writ of mandamus complaining about the trial court's June 27, 2012 order overruling her assertion of the Fifth Amendment privilege against self-incrimination in the underlying civil suit and compelling her response to certain requests for admissions. We requested and received a response from the real party in interest, Mario Bernal. The majority denied the petition in an opinion issued January 10, 2013. I dissented. In response to Ferguson's motion for rehearing, the majority reaffirms its denial of the petition for mandamus on the ground that Ferguson has presented insufficient evidence of the potential harm of self-incrimination from the trial court's order compelling her to admit all of the essential facts necessary to prove both the wrongful death claim against her in the underlying suit and her guilt for intoxication manslaughter in the pending criminal proceedings on which Bernal's wrongful death claim is based.

In my view, the majority misconstrues Ferguson's mandamus as seeking a ruling on an evidentiary point peculiar to this case rather than a ruling on a point of law applicable to all civil cases in which a trial court orders a defendant in simultaneous criminal and civil proceedings to admit to all of the elements of the charged crime and all of the elements of a civil claim based on the commission of that crime. It, therefore, erroneously employs a sufficiency of the evidence standard of review rather than a legal one.

I believe the majority opinion contradicts the mandate of both the United States Supreme Court and the Texas Supreme Court that a trial court cannot compel a witness to answer requests for admission in a civil suit unless, after a careful consideration of all the circumstances, it determines that "the answer(s) cannot possibly have [a] tendency to incriminate"

her.[1] I would hold that Ferguson, a defendant in a civil case who is simultaneously subject to ongoing criminal proceedings alleging crimes that form the basis of the civil case, cannot be legally compelled to answer requests for admission of all the facts necessary to prove both the elements of each of the crimes with which she is charged and her liability in the civil case, as her answers would necessarily have a tendency to incriminate her. Indeed, the requests for admission she is compelled by court order to answer seek nothing but her self-incrimination or the potential basis for a perjury charge. I would grant the petition for writ of mandamus, and I would provisionally order the trial court to vacate its order.

### Background

Ferguson is the defendant in the underlying wrongful-death lawsuit filed by Bernal, in which Bernal alleges that Ferguson negligently struck and killed his family-member, Gabriela Deyanira, with her car. Ferguson is also a defendant in criminal proceedings arising from the same underlying events for intoxicated manslaughter, failure to stop and render aid resulting in a fatality, and felony-murder. In this civil suit, Bernal sent Ferguson twenty-one requests for admission. These requests asked Ferguson to admit the facts and legal duties necessary to establish each of the elements Bernal is required to prove to establish his wrongful-death cause of action and to admit the elements going to the ultimate issue of her culpability for each of the crimes with which she is charged.

Specifically, Bernal requested that Ferguson admit that: (1) she "do[es] not contend that any defect or failure on the part of [her] vehicle caused the Incident"; (2) she "do[es] not contend there is a Responsible Third party not named by Plaintiff as a defendant in this lawsuit"; (3) she was "not on any prescription medication at the time of the Incident"; (4) she is "not claiming that [she] suffered from any medical condition immediately prior to the Incident that caused the Incident"; (5) she is "not claiming that [she] suffered from any medical condition immediately prior to the Incident that contributed to causing the Incident"; (6) her "Vehicle was involved in the Incident"; (7) "Gabriela Deyonira Rodriguez was killed as a result of the Incident"; (8) she "suffered no physical injuries as a result of the Incident"; (9) she "did not stop at the scene to render aid following the Incident"; (10) she "did not call 911 at any ti[m]e following the Incident"; (11) she "did not return to the scene of the Incident voluntarily"; (12) she "struck Gabriela Deyonira Rodriguez with [her] Vehicle"; (14) she "failed to maintain a single marked lane of travel at the time of the Incident"; (15) she "failed to drive in a single lane at the time of the Incident"; (16) she "operated [her] Vehicle in a reckless manner at the time of the Incident"; (17) she "failed to control [her] speed at the time of the Incident"; (18) "Gabriela Deyonira Rodriguez did not cause the Incident"; (19) she "owed a duty to Gabriela Deyonira Rodriguez to use ordinary care in the operation of [her] Vehicle"; (20) she "breached the duty to use ordinary care in the operation of [her] Vehicle"; and (21) "Gabriela Deyonira Rodriguez sustained fatal injuries in the Incident."[2]

Ferguson asserted her Fifth Amendment privilege against self-incrimination in

---

1. *Ex parte Butler*, 522 S.W.2d 196, 198 (Tex. 1975) (quoting *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951)).

2. Bernal's requests for production did not include a number 13.

response to each request individually and, subject to the assertion of the privilege, denied each of the requests. Bernal filed a Motion to Compel Ferguson to respond, and, after two oral hearings, the trial court issued a blanket order overruling all of Ferguson's assertions of her Fifth Amendment privilege without explanation and compelled her to respond to each of Bernal's requests for admission.

## Standard of Review

Mandamus is an extraordinary remedy that is available only when (1) a trial court clearly abuses its discretion and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). With respect to a trial court's determination of legal principles, "a trial court has no 'discretion' in determining what the law is or applying the law to facts." *In re Prudential*, 148 S.W.3d at 135 (quoting *Walker*, 827 S.W.2d at 840).

## Discussion

The United States Constitution and the Texas Constitution both guarantee that a person may not be compelled to testify or give evidence against himself. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; *Maness v. Meyers*, 419 U.S. 449, 464, 95 S.Ct. 584, 594, 42 L.Ed.2d 574 (1975); *In re Commitment of Lowe*, 151 S.W.3d 739, 745 (Tex.App.-Beaumont 2004, pet. denied). The Fifth Amendment can be asserted in both civil and criminal trials "wherever the answer might tend to subject to criminal responsibility him who gives it." *Tex. Dept. of Public Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex.1995) (quoting *McCarthy v. Arnd-*

*stein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924)). Thus it may be asserted to avoid civil discovery if the person invoking it reasonably fears the answer would tend to incriminate him. *Id.; see also Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1086 (5th Cir.1979) ("[T]he Fifth Amendment would serve as a shield to any party who feared that complying with discovery would expose him to a risk of self-incrimination.").

In a civil suit, however, the witness's decision to invoke the privilege is not absolute. *In re Speer*, 965 S.W.2d 41, 45 (Tex. App.-Fort Worth 1998, orig. proceeding). Rather, each assertion of the privilege rests on its own circumstances, and blanket assertions of the Fifth Amendment privilege are not permitted in civil cases. *In re R.R.*, 26 S.W.3d 569, 574 (Tex.App.-Dallas 2000, orig. proceeding); *Speer*, 965 S.W.2d at 45–46. Instead, the privilege must be asserted on a question-by-question basis. *Lowe*, 151 S.W.3d at 745. The trial court is entitled to determine whether assertion of the privilege appears to be based upon the good faith of the witness and is justifiable under all of the circumstances. *Ex parte Butler*, 522 S.W.2d 196, 198 (Tex.1975); *Speer*, 965 S.W.2d at 45.

"Because the privilege against self-incrimination must be asserted selectively in civil litigation, it follows that selective assertion of the privilege does not result in waiver." *Speer*, 965 S.W.2d at 46. Rather, upon a party's assertion of the Fifth Amendment privilege to a discovery request in a civil suit, the trial court reviews the discovery request, applies the law of privilege, discovery, and protection to the request, and determines how best to protect the privilege, the right to proceed with the case, and the right to defend the suit. *Id.* at 45; *see In re R.R.*, 26 S.W.3d at 574. "It is the trial court's duty to consider the witness's evidence and argument on each

individual question and determine whether the privilege against self-incrimination is meritorious." *Lowe,* 151 S.W.3d at 745 (quoting *Speer,* 965 S.W.2d at 46). "Before the judge may compel the witness to answer, he must be 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency to incriminate.'" *Butler,* 522 S.W.2d at 198 (quoting *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951)); *Speer,* 965 S.W.2d at 45.

The inquiry by the court is necessarily limited because the witness only has to show that a response is likely to be hazardous to him. *Speer,* 965 S.W.2d at 45. The witness cannot be required to disclose the very information the privilege protects. *Butler,* 522 S.W.2d at 198; *Speer,* 965 S.W.2d at 45. Each question for which the privilege is claimed must be studied, and the court must forecast whether an answer to the question could tend to incriminate the witness in a crime. *Speer,* 965 S.W.2d at 45. In some instances, the ramifications of answering the question will be apparent; in others, not so. *Id.* It is the latter situation that presents a difficult problem. *Id.*

Generally, the exercise of the privilege should not be penalized. *See Spevack v. Klein,* 385 U.S. 511, 514, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967); *Denton,* 897 S.W.2d at 760. However, because of the difference between the civil and criminal contexts, the United States Supreme Court has allowed juries in civil cases to draw negative inferences based on the assertion of the privilege. *Denton,* 897 S.W.2d at 760 (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976)); *Speer,* 965 S.W.2d at 46. For example, an exception to the general free exercise of the self-incrimination privilege in a civil suit, inapplicable in this case, is when the *plaintiff* in a civil suit invokes the privilege *offensively* to protect information that is privileged but also essential to the defense. *Denton,* 897 S.W.2d at 760–61. "A plaintiff who uses the privilege to protect relevant information from a defendant 'use[s] his Fifth amendment shield as a sword.'" *Id.* at 760–61 (quoting *Wehling,* 608 F.2d at 1087). The theory underlying the offensive use of the privilege against self-incrimination is that "a plaintiff who is seeking affirmative relief should not be permitted to maintain the action, and at the same time maintain evidentiary privileges that protect from discovery outcome determinative information not otherwise available to the defendant." *Id.* at 761. In such a case, the general rule against penalizing the assertion of the privilege does not prohibit the trial court from taking acts to ensure that the proceeding remains fair, such as barring the plaintiff asserting the privilege from introducing evidence on the subject matter of the privilege. *Id.* at 760.

In a recent case, the federal Fifth Circuit Court of Appeals held that "a party may invoke the Fifth Amendment privilege during the discovery process to avoid answering ... requests for admissions," among other discovery procedures. *Davis–Lynch, Inc. v. Moreno,* 667 F.3d 539, 547 (5th Cir.2012). This opinion accords with the opinion in *Denton,* which applied the law set forth above to deny the protection of privilege for offensive use by a plaintiff in response to requests for admission by defendants in the suit. *See Denton,* 897 S.W.2d at 760–61. Likewise, in *Gordon v. Federal Deposit Insurance Corp.,* the federal Court of Appeals for the District of Columbia Circuit analyzed the application of the privilege against self-incrimination to requests for admission in a civil suit in light of Federal Rule of Civil

Procedure 36(b), which, like the parallel Texas rule, Texas Rule of Civil Procedure 198.3, provides that a response to a request for admission "cannot be used against the party in any other proceeding." 427 F.2d 578, 581 (D.C.Cir.1970) (citing FED.R.CIV.P. 36(b)). Reasoning that the responses could be used "as a confirmation that facilitates the preparation of the criminal case, or perhaps as a lead to other evidence, which is part of the protection of the constitutional privilege," the federal court of appeals held that the constitutional right of a party to a civil suit not to incriminate himself applies to requests for admission in a civil suit and that the protection afforded by the prohibition in Rule 36 is insufficient to protect that right. *Id.*

Thus, both the United States Supreme Court and the Texas Supreme Court have held that the Fifth Amendment can be asserted in both civil and criminal trials "wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy*, 266 U.S. at 40, 45 S.Ct. at 17; *Denton*, 897 S.W.2d at 760. Both federal and Texas state courts have also held that the privilege may be asserted to avoid civil discovery if the person invoking it reasonably fears the answer would tend to incriminate him. *Denton*, 897 S.W.2d at 761; *see Wehling*, 608 F.2d at 1087.

Here, Ferguson asserted the privilege against self-incrimination on a question-by-question basis, in accordance with both federal and state constitutional law. *See, e.g., Lowe*, 151 S.W.3d at 745. The trial court was obligated to determine whether her assertion of the privilege appeared to be based upon good faith and was justifiable under all of the circumstances. *See Butler*, 522 S.W.2d at 198; *Speer*, 965 S.W.2d at 45. Although the parties agree that the trial court held two hearings on Ferguson's assertion of the privilege, the mandamus record contains no indication that the trial court reviewed each discovery request, applied the law of privilege, discovery, and protection to the request, and determined how best to protect the privilege, Bernal's right to proceed with the case, and Ferguson's right to defend herself against his suit. *See In re R.R.*, 26 S.W.3d at 574; *Speer*, 965 S.W.2d at 45. Nor is there any evidence that the trial court exercised its "duty to consider the witness's evidence and argument on each individual question and determine whether the privilege against self-incrimination is meritorious." *See Lowe*, 151 S.W.3d at 745 (quoting *Speer*, 965 S.W.2d at 46).

Rather, the record shows that, although each request for admission went to proof of the ultimate questions of Ferguson's liability to Bernal for Rodriguez's wrongful death or of Ferguson's guilt in the criminal case, the trial court issued a blanket order, without exception or explanation, denying Ferguson the privilege against self-incrimination and granting each of Bernal's demands that Ferguson be forced to answer his requests that she admit the elements of his suit and the crimes with which she is charged. The ramifications of requiring Ferguson to answer Bernal's questions without the protection of the privilege are apparent. Bernal is plainly asking Ferguson to subject herself to criminal responsibility and is seeking to deny her the privilege against self-incrimination in response to requests for admission that go directly to proof of the elements of Bernal's wrongful death suit and to proof of the criminal charges outstanding against her. *See Speer*, 965 S.W.2d at 45.

I would hold that the trial court's order denying Ferguson the privilege against self-incrimination and requiring her to answer Bernal's requests for admission is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See*

*Walker,* 827 S.W.2d at 839. Therefore, I would hold that the trial court clearly abused its discretion in ordering Ferguson to answer Bernal's requests for admission. *See id.*

Bernal argues, however, that federal and state constitutional law is "superseded by Texas Rule of Civil Procedure 198.3 with regard to requests for admissions." Thus, he argues, while federal courts have allowed the Fifth Amendment privilege to be invoked in response to requests for admissions, Texas courts have not allowed invocation of the privilege because, under the wording of Rule 198.3, their responses cannot be used in "any other proceeding." Specifically, he argues that, regarding requests for admissions, the Texas Rules of Civil Procedure provide that "[a]ny admission made by a party under this rule may be used solely in the pending action and not in any other proceeding." TEX.R. CIV. P. 198.3; *cf.* FED.R.CIV.P. 36(b) ("An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding."). As support for his argument, Bernal cites to *Speer* and *Katin v. City of Lubbock,* 655 S.W.2d 360 (Tex.App.-Amarillo 1983, writ ref'd n.r.e.). Bernal's argument, in my view, is without merit.

First, it is well established in Texas law that, "[w]here the parties have not argued that there are any material differences between the state and federal versions of a constitutional provision, we typically treat the two clauses as congruent." *City of Dallas v. VSC, LLC,* 347 S.W.3d 231, 234 n. 3 (Tex.2011); *see also Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 669 (Tex.2004) (stating that, in applying provisions of state and federal constitutions that are not significantly different, Texas courts "look to federal jurisprudence for guidance"). Here, Texas courts have historically cited to both state and federal law in applying both the Fifth Amendment to the United States Constitution and the parallel provision in the Texas Constitution, article 1, section 10. *Lowe,* 151 S.W.3d at 745 (stating that both United-ed States and Texas Constitution "guarantee a person may not be compelled to testify or give evidence against himself") (citing *Maness,* 419 U.S. at 464, 95 S.Ct. at 594); *see Butler,* 522 S.W.2d at 198.

Second, Bernal's construction of *Katin* and *Speer* is not supported by a reasonable reading of either case. In *Katin,* the defendant business owner, Katin, was permanently · enjoined from maintaining a portable sign on his business premises in violation of a city zoning ordinance. 655 S.W.2d at 361. Katin answered interrogatories, but he refused to answer requests for admissions of fact on the basis of his Fifth Amendment privilege, arguing that a violation of a zoning ordinance can also be punished by criminal sanctions. *Id.* at 362. The court observed,

> Because the rule language [in former Texas Rule of Civil Procedure 169, precursor to current Rule 198.1] prevents the requested admissions, if made, from being used against the answerer in any other proceeding, the Federal courts have held that the claim of a privilege against self-incrimination is unavailing as a reason to refuse to answer a request of admissions of act in a civil injunctive action . . . or in an action that involves only civil sanctions imposed as deterrents rather than punishment.

*Id.* at 363 (citing *Sec. & Exch. Comm'n v. MacElvain,* 417 F.2d 1134, 1137–38 (5th Cir.1969)). The court held that Katin's claim of a Fifth Amendment privilege against self-incrimination was "unavailing as the reason to refuse to either admit or deny the Rule 169 request for admissions of fact in this *civil injunctive action* involving only civil sanctions, because his

admissions, if made, could not be used against him in any other proceeding." *Id.* (emphasis added).

*Katin* supports the premise that the privilege against self-incrimination in the civil context is not available to protect a party against discovery necessary to the development of the opposing party's case when the only penalties faced by the party asserting the privilege are a civil injunction and fine, not criminal penalties, and when any answer to the discovery request cannot be used "as a confirmation that facilitates preparation of the criminal case, or perhaps as a lead to other evidence" in any criminal action. *See Gordon,* 427 F.2d at 581. Thus, the privilege against self-incrimination is unavailable as protection against answering requests for admissions in a civil case where the answer cannot reasonably be interpreted as tending to subject the person asserting the privilege to criminal responsibility under the totality of the circumstances. *See Denton,* 897 S.W.2d at 760. Because the only penalties faced by Katin were civil, and he demonstrated no reasonable expectation that his answers would subject him to criminal prosecution, the privilege was unavailable. *Katin* is, therefore, inapplicable to this case, where the admissions the trial court ordered Ferguson to answer go directly to proof of the elements of both the civil action and the criminal charges pending against her.

Nor can *Speer* reasonably be interpreted as supporting Bernal's interpretation of the law. In that case, the trial court found that Speer's answering five interrogatories in a civil case without asserting the privilege against self-incrimination did not waive his right to assert the privilege against self-incrimination in response to other interrogatories to which he did object; nor did Speer "waive his privilege against self-incrimination by denying the requests for admissions" of fact made by the opposing party without asserting the privilege. 965 S.W.2d at 45–46. The court then stated that former Rule 169 "provides protection to a party in Speer's predicament.... Therefore, a party may not assert the privilege against self-incrimination as a reason for refusing to answer requests for admission." *Id.* at 46 (citing *Katin,* 655 S.W.2d at 363). Despite the court's sweeping statement of the rule, it did not apply it in a sweeping manner, but merely asserted that the fact that Speer had not asserted the privilege in responding to requests for admission in "compliance with the law did not result in waiver of the right to assert the privilege as to other requested discovery." *Id.*

Speer, like Katin, had shown no reasonable expectation that his answering the requests for admission would reasonably subject him to criminal prosecution under the totality of the circumstances in his particular case. The law regarding the availability of the privilege had already been set out fully and accurately in the *Speer* opinion without any indication that the privilege does not apply to requests for admissions under any circumstances as a matter of law. *See id.* at 45–46. Thus, *Speer,* like *Katin* cannot reasonably be read as holding that the privilege against self-incrimination does not apply to requests for admission regardless of the circumstances. Moreover, if it did, it would conflict with federal law as set out in *Moreno* and *Gordon,* both of which must be viewed as persuasive, with the United States Supreme Court cases cited above, and with *Denton.*

I would hold that *Katin* and *Speer* both stand for the proposition that the Fifth Amendment privilege against self-incrimination is available in a civil action where the trial court's careful examination of the totality of the circumstances demonstrates that the party invoking the privilege has not waived the privilege by offensive use or that the party is invoking the privilege

because the party reasonably fears the answer would tend to incriminate him or would facilitate the preparation of a criminal case, or would perhaps lead to other evidence in any criminal action. *See Gordon,* 427 F.2d at 581.

This construction is supported by other Texas court of appeals cases construing the privilege as inapplicable only when it is not invoked in good faith, or to protect against a reasonable fear of self-incrimination, but to prevent discovery necessary to the development of the opposing party's case. *See Denton,* 897 S.W.2d at 760; *Marshall v. Ryder Sys., Inc.,* 928 S.W.2d 190, 195–96 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (upholding sanctions against plaintiff who used privilege against criminal activity offensively to refuse to answer request for admission concerning "other criminal activity" where assertion of privilege would "deny appellees information crucial to their defense"); *Stewart v. Frazier,* 461 S.W.2d 484, 486 (Tex.Civ. App.-Dallas 1970, no writ) (holding that trial court properly deemed defendant's responses to requests for admission "admitted" because defendant's "real purpose in refusing to answer the request for admissions was, not to prevent being a witness against himself in a criminal prosecution, but to hinder [the plaintiff] in this common law damage suit from proving an essential element in his case").

The construction of *Katin* and *Speer* that Bernal urges—namely that the Fifth Amendment privilege against self-incrimination does not apply to requests for admission in a civil suit because, under Rule 198.3, the answers cannot be used in any other proceeding—is contrary to established law and leads to absurd consequences. Here, the trial court's blanket order denying the Fifth Amendment privilege to Ferguson—even in response to Bernal's requests that she admit each of the elements of guilt in the criminal charges brought against her and each of the elements of liability in his wrongful death suit—can be sustained only by a reading *of Katin* and *Speer* that is unreasonable in the context of those cases themselves, is contrary to established federal and Texas Supreme Court law, and has the absurd consequence of rendering the federal and state constitutional privilege against self-incrimination unavailable as a matter of law in response to requests for admission in a civil suit brought in Texas state court. Thus, I would hold that the trial court's blanket order denying the privilege is arbitrary and unreasonable and, therefore, a clear abuse of the court's discretion. *See Walker,* 827 S.W.2d at 839 (holding that trial court clearly abuses its discretion if it reaches decision so arbitrary and unreasonable as to amount to clear and prejudicial error of law).

### Conclusion

I would grant the petition for writ of mandamus and would direct the trial court to vacate its order. I would issue the writ only if the trial court failed to do so.